**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Marianne T. O'Toole, as Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Salvatore LaMonica, Esq.
David A. Blansky, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

In re:                                                      Chapter 7

MICHAEL P. D'ALESSIO, et al.,                               Case No.: 18-22552 (RDD)
                                                            (Jointly Administered)

                Debtors.

------------------------------------------------------------------------x

MARIANNE T. O'TOOLE, as Chapter 7 Trustee
of the estate of Michael P. D'Alessio,

                                       Adv. Pro. No.:

                Plaintiff,

    -against-

RONALD G. D'ALESSIO, SCHURZ AVENUE
DEVELOPMENT LLC, SCHURZ 9 LLC, JANE DOE
"1" through "10", JOHN DOE "1" through "10", and such
other unnamed Defendants presently unknown to the
Trustee who may be holding assets which are property of
the estates,

                Defendants.

------------------------------------------------------------------------x

## **COMPLAINT**

       Plaintiff Marianne T. O'Toole, solely in her capacity as Chapter 7 Trustee (the "<u>Plaintiff</u>"

or "<u>Trustee</u>") of the jointly administered estates of Michael P. D'Alessio ("D'Alessio"), et al.

(the "<u>Debtors</u>")[1], by her counsel, LaMonica Herbst & Maniscalco, LLP, as and for her complaint

---

[1] The Debtors are collectively defined as Michael P. D'Alessio, Michael Paul Enterprises LLC, 184 East 64th Street Holding LLC, 184 East 64th Street Associates LLC, Bluestone 184 LLC, Bluestone 67 LLC, 227 E 67th Street Associates LLC, 227 E 67th Street Holding LLC, 145-147 East 62nd Street Associates LLC, Bluestone 163 - 165 LLC, 163 - 165 East 62nd Street Associates LLC, 163 - 165 East 62nd Street Holding LLC, 145-147 East 62nd Street Holding LLC, 3 Sandpiper Court Holding LLC, 45 Middle Pond Road Associates LLC, 43 Middle Pond Road Associates LLC, 41 Middle Pond Road Associates LLC, 43 Middle Pond Road Holding LLC, 41-45 MPR Holding LLC, Bluestone Sandpiper LLC, 3 Sandpiper Court LLC, 15-17 Circle Holding LLC, MBI Partners LLC, 15 Circle RD-MBI LLC, and 17 Circle RD-MBI LLC.

against defendants Ronald G. D'Alessio ("Ronald"), Schurz Avenue Development LLC ("Schurz Avenue"), Schurz 9 LLC ("Schurz 9"), Jane Doe "1" through "10", John Doe "1" through "10", and such other unnamed defendants presently unknown to Plaintiff who may be holding assets which are property of the estate (collectively, the "Defendants"), alleges as follows:

**JURISDICTION AND VENUE**

1.      This is a core proceeding under 28 U.S.C. §§ 157 and 1334, and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.      This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.

3.      This Court is the proper venue for this proceeding in accordance with 28 U.S.C. § 1409(a).

4.      The statutory predicates for the relief sought herein include sections 105, 323, 541, 542, 544, 547, 548, 549, and 550 of Title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6009, 7001 and 7065, Sections 273, 274, 275, 276, and 276-a of New York Debtor and Creditor Law (the "DCL"), New York common law and any common law, rule, regulation and/or any applicable law of any other jurisdiction in which assets that are property of the estate currently unknown to the Trustee are located.

5.      Pursuant to Local Rule 7008-1 of the Bankruptcy Court for the Southern District of New York (the "Court"), Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Judge presiding over this adversary proceeding if it is determined that the Bankruptcy Judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## BACKGROUND AND PARTIES

### A.     The Bankruptcy Filings

6.     On April 17, 2018 (the "Involuntary Petition Date"), an involuntary petition was filed against D'Alessio by petitioning creditors Greater Hudson Bank ("GHB"), The Westchester Bank and BNB Bank ("BNB") in the Court.

7.     On May 17, 2018, the Court entered an Order for relief with D'Alessio's consent.

8.     Plaintiff was appointed as the Chapter 7 Trustee of the D'Alessio estate and, by operation of law, Plaintiff is the permanent Chapter 7 Trustee of the D'Alessio's estate.

9.     On May 30, 2018, a voluntary petition for relief was filed on behalf of Michael Paul Enterprises LLC, a D'Alessio affiliate.

10.     Plaintiff was appointed as the Chapter 7 Trustee of the estate of Michael Paul Enterprises LLC and, by operation of law, is the permanent Chapter 7 Trustee in that estate.

11.     On June 7, 2018, voluntary petitions for relief under Chapter 7 of the Bankruptcy Code were filed in this Court on behalf of the following D'Alessio affiliates: 184 East 64th Street Holding LLC; 184 East 64th Street Associates LLC; Bluestone 184 LLC; Bluestone 67 LLC; 227 E 67th Street Associates LLC; 227 E 67th Street Holding LLC; 145-147 East 62nd Street Associates LLC; Bluestone 163 - 165 LLC; 163 - 165 East 62nd Street Associates LLC; and 163 - 165 East 62nd Street Holding LLC.

12.     Plaintiff was appointed as the Chapter 7 Trustee of each of these estates and, by operation of law, is the permanent Chapter 7 Trustee in those estates.

13.     On June 8, 2018, a voluntary petition for relief under Chapter 7 of the Bankruptcy Code was filed in this Court on behalf of 145-147 East 62nd Street Holding LLC, a D'Alessio affiliate.

14.     Plaintiff was appointed as the Chapter 7 Trustee of this estate and, by operation of law, is the permanent Chapter 7 Trustee of that estate.

15.     On June 11, 2018, a voluntary petition for relief under Chapter 7 of the Bankruptcy Code was filed in this Court on behalf of 3 Sandpiper Court Holding LLC, a D'Alessio affiliate.

16.     Plaintiff was appointed as the Chapter 7 Trustee of this estate and, by operation of law, is the permanent Chapter 7 Trustee of that estate.

17.     On June 12, 2018, voluntary petitions for relief under Chapter 7 of the Bankruptcy Code were filed on behalf of the following D'Alessio affiliates: 45 Middle Pond Road Associates LLC; 43 Middle Pond Road Associates LLC; and 41 Middle Pond Road Associates LLC.

18.     Plaintiff was appointed as the Chapter 7 Trustee of each of these estates and, by operation of law, is the permanent Chapter 7 Trustee in those estates.

19.     On June 21, 2018, voluntary petitions for relief under Chapter 7 of the Bankruptcy Code were filed on behalf of the following D'Alessio affiliates: 43 Middle Pond Road Holding LLC; 41-45 MPR Holding LLC; Bluestone Sandpiper LLC; and 3 Sandpiper Court LLC.

20.     Plaintiff was appointed as the Chapter 7 Trustee of each of these estates and, by operation of law, is the permanent Chapter 7 Trustee in those estates.

21.     On June 22, 2018, voluntary petitions for relief under Chapter 7 of the Bankruptcy Code were filed on behalf of the following D'Alessio affiliates: 15-17 Circle Holding LLC and MBI Partners LLC.

22.     Plaintiff was appointed as the Chapter 7 Trustee of each of these estates and, by operation of law, is the permanent Chapter 7 Trustee in those estates.

23.     On June 27, 2018, voluntary petitions for relief under Chapter 7 of the Bankruptcy Code were filed on behalf of the following D'Alessio affiliates: 15 Circle Rd-MBI LLC and 17 Circle Rd-MBI LLC.

24.     Plaintiff was appointed as the Chapter 7 Trustee of each of these estates and, by operation of law, is the permanent Chapter 7 Trustee in those estates.

25.     Pursuant to Orders of the Court dated July 17, 2018, the Debtors' cases are being jointly administered for procedural purposes under the *Michael P. D'Alessio* case.

**B.     The Criminal Case Against D'Alessio**

26.     On August 29, 2018, the United States of America filed a sealed indictment against D'Alessio in the United States District Court for the Southern District of New York, under case no. 18-cr-00617-JMF.

27.     By order entered on August 30, 2018, the indictment was unsealed.

28.     The indictment accused D'Alessio of engaging in a scheme to defraud between in or about 2015 through April 2018 by which he induced investors to invest in real estate development projects through entities he controlled in exchange for monthly interest payments and a share in the profits on the sale of the developed properties.

29.     The indictment claimed that D'Alessio misappropriated funds for his own use and benefit and sought to conceal his fraud.

30.     On November 8, 2018, the United States of America filed a superseding information in which it charged D'Alessio with one count of wire fraud during the period

between 2015 through April 2018 and one count of bankruptcy fraud by concealing assets and making false claims in connection with his bankruptcy case between May 2018 and July 2018.

31.     On November 8, 2018, D'Alessio entered a guilty plea to both charges of the superseding information.

32.     On November 8, 2018, D'Alessio also entered into a consent preliminary order of forfeiture as to specific property and a money judgment in the sum of $58,090,047.16.

33.     In the sentencing memorandum filed by the United States of America in D'Alessio's criminal case on March 15, 2019, the government noted,

> A search of a cellular phone seized pursuant to a search warrant executed at the time of D'Alessio's arrest reveals his fraudulent state of mind: On October 28, 2017, D'Alessio used the internet service on his device and searched "what is the biggest bank in the Dominican Republic" and then "banco popular dominicano." On November 1, 2017, he searched "which country is best to hide money from us," "what is the current situation with banking in the cayman islands," "how far is cayman islands from puerto rico," and "how far is cayman islands from ny." On November 7, 2017, he searched "about cayman islands" seven times and "banking in the cayman islands" once.

34.     On April 5, 2019, D'Alessio was sentenced to six years of incarceration and three years of supervised release.

35.     In a press release issued by the Department of Justice on April 5, 2019, the United States Attorney stated,

> In 2018, D'ALESSIO went into involuntary bankruptcy under Chapter 7 of Title 11 of the United States Code.  In connection with this bankruptcy proceeding, captioned *In re Michael D'Alessio,* No. 18-22552 (Bankr. S.D.N.Y.), D'ALESSIO submitted forms that fraudulently omitted money and property belonging to his estate, and made a false declaration under penalty of perjury concerning his money and property. Specifically, at the time of D'Alessio's arrest in August 2018, law enforcement agents found $44,000 in cash, including $30,000 in a gym bag alongside a firearm. Following the arrest, law enforcement agents also learned about a bank account controlled by D'Alessio - which had not been reported in the bankruptcy - that carried a cash balance of $3,047.16. D'Alessio's cell phone also contained text messages between D'Alessio and another individual in which D'Alessio stated: "I need some of my money tomorrow for Italy" and "I need my 100k I gave you to hold."

36.     In connection with the sentencing, the United States Attorney stated, "In the end, all he built was a Ponzi scheme that he used to rip off his investors of their hard-earned life savings to the tune of $58 million".

**C.     The Parties**

37.     Plaintiff is authorized to file this action under Section 323 of the Bankruptcy Code and Bankruptcy Rule 6009.

38.     Ronald is D'Alessio's younger brother.

39.     Ronald is an individual residing in the State of New York.

40.     Schurz Avenue is an active domestic limited liability company formed in the State of New York, having an address for purposes of service of process through the New York State Department of State in White Plains, New York.

41.     Schurz 9 is an active domestic limited liability company formed in the State of New York, having an address for purposes of service of process through the New York State Department of State in White Plains, New York.

42.     Upon information and belief, Ronald is the sole member and manager of Schurz Avenue and 9 Schurz.

43.     Defendants are insiders of the Debtors within the meaning of Bankruptcy Code § 101(31) and applicable law.

44.     The unnamed Defendants are those individuals and/or entities who (i) were the recipients or beneficiaries of transfers of property of the Debtors made prior to the filing of each of their petitions and/or post-petition transfers of their assets, (ii) are subsequent transferees of such transfers, and/or (iii) are in possession, custody or control of property of the Debtors' estates.

45.     Prior to the Involuntary Petition Date, D'Alessio was the owner and/or manager of each of the corporate debtors.

46.     Prior to the Involuntary Petition Date and the filing of the voluntary petitions by the corporate Debtors, Ronald was employed by the debtor Michael Paul Enterprises LLC.

47.     Upon information and belief, as of November 2017, Ronald was being paid $1,000.00 per week for services allegedly rendered since 2000 to the debtor Michael Paul Enterprises LLC.

48.     Upon information and belief, Ronald was also employed as a broker by a related non-debtor entity owned by D'Alessio, American Dream Realty LLC, which entity was often paid commissions on the purchase and sale of the real estate developed by the Debtors.

49.     Upon information and belief, Ronald has worked as a project manager on various D'Alessio projects since 1998.

50.     According to the presentencing letter submitted by D'Alessio in his criminal case, dated March 8, 2019, D'Alessio and Ronald first worked in a disc jockey business in their early teens and have engaged in business together since.

51.     According to that letter, as a result of D'Alessio's criminal conduct, "Ronald is left without money and in search of a job to care for his 10-year-old son … and newborn baby …"

A.      **The Pre-Petition Schurz Transfers**

52.     In paragraph "18" of the statement of financial affairs filed by D'Alessio with the Court on May 30, 2018, D'Alessio disclosed that he made two transfers of his interests in property to Ronald on March 27, 2018, namely his membership interests in Schurz Avenue and Schurz 9 (the "Schurz Transfers").

53.     D'Alessio claimed that he had received $50,000.00 for his membership interests in each of Schurz Avenue and Schurz 9.

54.     Upon information and belief, D'Alessio was the sole member and manager of Schurz Avenue and Schurz 9 prior to March 27, 2018.

55.     Schurz Avenue and Schurz 9 each held fee title to a single mixed-use building located in Bronx, New York on the date of the Schurz Transfers and continue to hold title to those properties today.

56.     Schurz Avenue is the fee owner of the real property known as, and located at, 2903 Schurz Avenue, Bronx, New York (the "2903 Property"), identified as Block 4453 Lot 141 in the records of the New York City Department of Finance Office of the City Register.

57.     Schurz 9 is the fee owner of the real property known as, and located at, 2909 Schurz Avenue, Bronx, New York (the "2909 Property"), identified as Block 5453 Lot 0138 in the records of the New York City Department of Finance Office of the City Register.

58.     According to a summary of D'Alessio's "personal portfolio" dated February 9, 2018 contained in the Debtors' records, the 2903 Property had a fair market value of $750,000.00 as of that date.

59.     According to that summary, the 2903 Property was encumbered by a first mortgage lien granted to BNB for which a balance of $528,696 was the due to BNB.

60.     Using D'Alessio's valuation, there existed over $220,000 in equity in the 2903 Property before deducting any applicable and ordinary closing costs.

61.     According to a summary dated February 9, 2018, the 2909 Property had a fair market value of $750,000.00 as of that date.

62.     According to the summary dated February 9, 2018, the 2909 Property was encumbered by a first mortgage lien granted to GHB for which a balance of $514,538 was then owed to GHB.

63.     Using D'Alessio's valuation, there existed over $235,000 in equity in the 2909 Property before deducting any applicable and ordinary closing costs.

64.     According to income and expense reports dated March 15, 2018, which were e-mailed to D'Alessio on the same date as the Schurz Transfers, both the 2903 Property and 2909 Property were income producing properties.

65.     According to income and expense report for the 2903 Property, dated March 15, 2018, it was comprised of four units, of which three were then rented, and the parking space was being separately rented.

66.     According to income and expense report for the 2903 Property, dated March 15, 2018, the 2903 Property had net annual cash flow of $20,320 as of that date.

67.     According to income and expense report for the 2909 Property, dated March 15, 2018, it was comprised of four units, all of which were then rented, and the parking space was being separately rented.

68.     According to income and expense report for the 2909 Property, dated March 15, 2018, the 2909 Schurz Property had net annual cash flow of $13,189 as of that date.

69.     Upon information and belief, the 2903 Property and the 2909 Property each have a present fair market value of more than $800,000 in an arms-length transaction when properly marketed.

70.     According to the New York State Unified Court System Electronic Filing System, prior to the date of the Schurz Transfers, D'Alessio was a named defendant in no less than ten

(10) lawsuits commenced in the Supreme Court of the state of New York, primarily in New York and Westchester counties, in which he and certain codefendants were sued for millions of dollars in money damages.

71.     Upon information and belief, additional lawsuits were commenced on the date of the Schurz Transfers and immediately thereafter.

72.     Given that there existed, as of February 9, 2018, more than $200,000 in equity in each of the 2903 Property and the 2909 Property, to the extent Ronald actually paid D'Alessio $50,000 in exchange for each of the Schurz Transfers, the Schurz Transfers were not made for reasonably equivalent value or fair consideration.

73.     Alternatively, to the extent the Schurz Transfers were made to Ronald on account of an antecedent debt owed by D'Alessio to him, the Schurz Transfers are avoidable as preferential transfers.

74.     Upon information and belief, D'Alessio and the corporate Debtors made transfers to Ronald, or for his benefit, within two-years and six-years prior to the filing of each of their bankruptcy petitions (the "Two-Year Transfers" and "Six-Years Transfers", respectively), in addition to the Schurz Transfers, for which they failed to receive reasonably value or fair consideration and/or the Debtors made additional transfers to Ronald on accountant of an antecedent debt within one-year and/or 90-days of the filing of their petitions (collectively, the "Preferential Transfers"), each of which is subject to avoidance.

**B.     The Post-Petition Transfers to Ronald**

75.     On January 28, 2019, D'Alessio, through common counsel shared by him and Ronald, filed a general unsecured claim identifying Ronald as a creditor owed $100,000 on account of money loaned, which claim was denominated claim no. 226 by the Clerk of the Court.

76.     A promissory note dated April 5, 2018 and executed by D'Alessio in favor of Ronald in front of one of his employees is annexed to the proof of claim (the "Note").

77.     Upon information and belief, D'Alessio made other transfers of property to Ronald, including, but not limited to, wire transfers in the sum of $37,000 on August 7, 2018, and $50,000 on August 15, 2018 (the "Post-Petition Transfers").

78.     Upon information and belief, the Note was granted and the Post-Petition Transfers were not authorized by the Bankruptcy Code or approved by the Court.

**C.      Ronald's Efforts to Delay the Trustee**

79.     On February 27, 2019, Plaintiff filed an application seeking the entry of an order under Bankruptcy Rule 2004 directing the examination of and production of documents by Ronald relating to, the Schurz Transfers, the 2903 Property and the 2909 Property.

80.     On March 4, 2019, the Court entered an Order granting the relief sought by Plaintiff in her application (the "2004 Order").

81.     The 2004 Order specifically required Ronald's production of 13 categories of documents, including, but not limited to, documents relating to the Schurz Transfers, the 2903 Property, the 2909 Property, funds or property received by Ronald from any of the Debtors, his knowledge of the financial condition of the Debtors, and the proof of claim filed by D'Alessio on behalf of Ronald arising from a promissory note allegedly signed by D'Alessio on April 5, 2018 (the "Note"), denominated Claim No. 226.

82.     On March 14, 2019, the 2004 Order, together with subpoenas requiring Ronald's production of documents by April 4, 2019 and appearance for examination on April 10, 2019, were served on Ronald.

83.     On April 3, 2019, the day before documents were due to be produced by Ronald (and D'Alessio's parents under a separate 2004 Order and subpoenas), counsel for the Debtors, Rosen & Associates, contacted counsel to Plaintiff to advise that both Ronald and D'Alessio's parents, Irene and Ronald D'Alessio, had retained the firm to represent them in connection with Plaintiff's investigation under Bankruptcy Rule 2004.

84.     Counsel requested an extension of the time for production and the adjournment of the depositions.

85.     Plaintiff consented to an extension of the production deadline to April 15, 2019, conditioned upon Ronald and his parents providing written responses to the subpoenas on or before April 11, 2019, producing the responsive documents so as to be received by April 25, 2019, and Ronald and his parents appearing for examination on May 14 and 16th.

86.     On April 11, 2019, Plaintiff received Ronald's written response to the 2004 Order and subpoena for the production of documents.

87.     In the response, Ronald denied he was in the possession, custody or control of documents responsive to seven of the 13 classes of documents required to be produced under the 2004 Order, including the request pertaining to the Note.

88.     Ronald's inability to produce documents within his possession, custody and control pertaining to the Note, a transaction that allegedly occurred less than 14 days prior to the Involuntary Petition Date raised serious questions as to the validity of the debt asserted in his proof of claim.

89.     On April 17, 2019, common counsel to the Debtors, Ronald, and his parents e-mailed Plaintiff's counsel and reported that Ronald and his mother had visited its office for the purpose of delivering documents responsive to the 2004 Orders and subpoenas.

90. At that time, counsel requested, among other things, that Plaintiff entertain deposing Ronald after 5:00 pm on his scheduled date so he would not have to miss work at the job he recently started.

91. On April 23, 2019, common counsel to the Debtors, Ronald and the parents requested a further extension of time by which to produce responsive documents to May 3, 2019.

92. At that time, counsel reported that Ronald and his parents had provided some documents, but were "gathering the documents regarding finances".

93. Conditioned upon counsel producing those documents provided by Ronald and his parents already, on April 24, 2019, Plaintiff consented to further extend the deadline for the production of documents to May 3, 2019.

94. On April 24, 2019, Ronald, through his counsel, provided only two documents, namely his payroll stub for the pay period ended November 19, 2017 for his employment with the Debtor Michael Paul Enterprises LLC and a photocopy of his passport, the latter reflecting multiple trips to Punta Cana, Dominican Republic between December 2017 and summer 2018, after D'Alessio researched how to hide money outside of the United States and banks in the Dominican Republic.

95. None of the documents produced by Ronald to date pertain to the Schurz Transfers, the 2903 Property or the 2909 Property.

**D.** **Ronald's Attempt to Sell the 2903 Property**

96. On April 26, 2019, counsel to Plaintiff was contacted by counsel to BNB and was advised that Ronald, as sole member and manager of Schurz Avenue, had requested a payoff in connection with a closing on the sale of the 2903 Property scheduled for April 30, 2019.

97.     BNB's counsel reported that it had been contacted by Ronald, on behalf of Schurz Avenue, and asked to provide a payoff to its counsel, Edward Shapiro, Esq.

98.     Mr. Shapiro had represented the Debtors and D'Alessio's related entities since at least 2016 through the Involuntary Petition Date in various landlord/tenant and other real estate matters.

99.     Upon information and belief, Mr. Shapiro prepared documents to effectuate the Schurz Transfers.

100.    Upon information and belief, subsequent to the Schurz Transfers Mr. Shapiro continued to communicate with and take direction from D'Alessio with respect to the management of the 2903 Property and 2909 Property, notwithstanding that D'Alessio had conveyed his interests in Schurz Avenue and Schurz 9 to Ronald and Ronald was the sole member and manager of those entities.

101.    Upon information and belief, D'Alessio continued to be involved with the management of Schurz Avenue and Schurz 9 after the Schurz Transfers and his involvement may have entailed making transfers to or from their bank accounts subsequent to the date of the Schurz Transfers.

102.    According to counsel for BNB, BNB is presently owed approximately $525,000.

103.    Upon information and belief, there are no other liens and encumbrances against the 2903 Property.

104.    Schurz Avenue disclosed $1,541,957 in assets as of December 31, 2016 on its Schedule L balance sheet for tax year 2016.

105.    New York City has assessed the market value of the 2903 Property to be $714,000 for purposes of the 2018/2019 year real estate taxes.

106. D'Alessio valued the 2903 Property at $750,000 as of February 2018.

107. Upon information and belief, there presently exists no less than $200,000 in equity in the 2903 Property.

108. Notwithstanding that Ronald wished to be excused from appearing for examination during regular business hours due to his new job, it appears that he has the leisure to close on the sale of real estate that is the subject of the investigative process he has delayed.

109. It is also apparent that Ronald has the means of obtaining documents pertaining to the Schurz Transfers and both the 2903 Property and 2909 Property when he is sufficiently motivated to do so.

110. In view of D'Alessio's representations to the sentencing Court concerning Ronald's financial condition, Ronald has delayed Plaintiff's Rule 2004 investigation for the purpose of liquidating valuable assets subject to avoidance and recovery by the estate and preventing Plaintiff's recovery of the same.

**E. Ronald's Participation in D'Alessio's Scheme**

111. Upon information and belief, Ronald, either directly or indirectly, provided substantial assistance to advance the Debtors' commission of frauds against their creditors.

112. Upon information and belief, Ronald, either directly or indirectly, has engaged in activities and business transactions under false pretenses.

113. Upon information and belief, Ronald, either directly or indirectly, has made false representations about the Debtors' assets.

114. Upon information and belief, Ronald intended to defraud the Debtors' creditors by engaging in false, manipulative and contrived business transactions, which included the Schurz Transfers.

115.    Upon information and belief, Ronald, either directly or indirectly, agreed to facilitate the transfer or concealment of transfers of the Debtors' assets.

116.    Upon information and belief, on or about December 9, 2017, D'Alessio entered into a contract of sale to purchase a single-family residence known as, and located at, 2324 Date Palm Road, Boca Raton, Florida, located in the Royal Palm Yacht and Country Club for $1.3 million.

117.    On March 29, 2018, two days after the Schurz Transfers, D'Alessio entered into a written amendment to that contract of sale by which Ronald was substituted as the purchaser and the closing was scheduled for April 30, 2018

118.    By warranty deed dated May 4, 2018 and recorded on May 9, 2018, Ronald acquired title to that property for a purchase price of $1.3 million.

119.    The purchase was funded, in part, with a $910,000 purchase money mortgage granted by Ronald.

120.    Upon information and belief, the property was listed for sale shortly thereafter.

121.    By warranty deed dated September 28, 2018 and recorded on October 2, 2018, Ronald sold the property for $1,107,000.

122.    Upon information and belief, the purchase money mortgage was satisfied from the proceeds of sale.

123.    Plaintiff has not yet identified the source of the funds used for the purchase of the property or the disposition of the net proceeds of sale as a result of Ronald's lack of compliance with the Order and Plaintiff's subpoenas.

124.    This transaction evidences D'Alessio's efforts to hinder, delay and defraud his creditors and diversion of opportunities to his relations for the same purpose.

125. Upon information and belief, Ronald intended hide to the Debtors' assets from their creditors.

126. Upon information and belief, Ronald conspired with D'Alessio to further the fraud on the Debtors' creditors and benefitted from that scheme.

127. Upon information and belief, Ronald may have travelled to the Dominican Republic in late 2017 and 2018 for the purpose of placing D'Alessio's assets outside of the United States.

**F.    <u>Reservation of Rights</u>**

128. Plaintiff's investigation is ongoing and Plaintiff reserves the right to (a) supplement the information regarding any pre- and post-petition transfers made to, or for the benefit of, Ronald by any of the Debtors; and (b) seek recovery of such additional transfers.

129. To the extent that any of the avoidance and/or recovery claims may be inconsistent with each other, they are to be treated as being plead in the alternative.

<u>**FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**</u>
**(Injunctive Relief)**

130. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "129" as if set forth fully herein.

131. Pursuant to Bankruptcy Code § 323(a), Plaintiff is the representative of the Debtors' estates.

132. Pursuant to Bankruptcy Code § 541(a), property of the Debtors' estates includes, but is not limited to, "all legal or equitable interests of [the Debtors] in property as of the commencement of the case", "[a]ny interest in property that the trustee recovers under section . . . 550, . . . of this title", and "[p]roceeds, product, offspring, rents or profits of or from property of the estate".

133.     Pursuant to Bankruptcy Code § 704(a), Plaintiff is charged with, among other things, collecting and reducing to money property of the estate and accounting for all property received.

134.     The estate will suffer irreparable injury if Defendants are able to maintain control over or dispose of assets that may be property of the Debtors' estates and/or which were derived from property of the estate.

135.     Plaintiff is likely to prevail on the merits of her claims against Defendants based upon the allegations set forth herein and the facts of this case.

136.     Ronald engaged in fraudulent activity in connection with the actions described herein.

137.     As reflected by the Schurz Transfers and the assignment of the contract to purchase the Boca Raton property, D'Alessio has placed assets in Ronald's name in at least two states.

138.     Upon information and belief, Ronald is holding, directly or indirectly, property of the Debtors' estates or monies derived from property of the estates.

139.     Upon information and belief, Ronald has transferred monies, directly or indirectly, at D'Alessio's direction, which monies are, or were derived from, assets of the Debtors' estates.

140.     Ronald has engaged in a conspiracy to defraud the Debtors' creditors.

141.     Ronald's activity and behavior is and has been motivated by his intent to defraud the Debtors' creditors.

142. Defendants' actions have aided and abetted fraudulent conveyances of property of the Debtors' estates, or monies derived from property of the Debtors' estates, while D'Alessio was insolvent and subject to millions of dollars in lawsuits.

143. Defendants will not be harmed by the issuance of an injunction with respect to any sale of the 2903 Property and 2909 Property because it will maintain the status quo over property of the Debtors' estates, or assets derived from property of the Debtors' estates.

144. The balance of hardships weighs decidedly in favor of the granting of injunctive relief as Defendants will not suffer any prejudice while Plaintiff and creditors will be harmed if Defendants are permitted to dispose of assets of the Debtors' estates, or assets derived from property of the Debtors' estates, maintain control over such assets, and further transfer such assets.

145. Pursuant to Bankruptcy Code § 105, Bankruptcy Rule 7065, and Rule 65 of the Federal Rules of Civil Procedure, the Court may enjoin a party from proceeding with or continuing with, a course of conduct or practice which depletes, diminishes and/or effects property and/or diminishes the value of those assets or impairs Plaintiff's recovery efforts.

146. By reason of the foregoing, Plaintiff is entitled to an order and judgment granting a preliminary and permanent injunction enjoining Defendants from transferring, conveying, or otherwise disposing of the 2903 Property, the 2909 Property or any membership interests in Schurz Avenue and Schurz 9.

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Property of the Estate)

147. Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "146" as if set forth fully herein.

148. The Debtors have legal and equitable interests in assets subject to the control of Defendants, including, but not limited to the membership interests conveyed by D'Alessio to Ronald, the 2903 Property and the 2909 Property.

149. The Debtors' legal and equitable interests in these assets are property of their respective estates.

150. Upon information and belief, each of Defendants is holding assets that are property of the Debtors' estates and/or which were derived from property of the Debtors' estates.

151. Upon information and belief, each of Defendants acquired assets, as set forth herein through property of the Debtors' estates, directly or indirectly.

152. D'Alessio and Ronald engaged in fraudulent activity in connection with the actions described herein.

153. Ronald acquired assets, either directly or indirectly, including, the membership interests in Schurz Avenue and Schurz 9 and the opportunity to purchase the Boca Raton property, each of which were or should have been property of the Debtors' estates.

154. By reason of the foregoing, and in accordance with Bankruptcy Code §§ 541 and 542, Plaintiff is entitled to the entry of an Order and Judgment directing Defendants to turn over any and all property of the Debtors' estates, including, but not limited to, the Schurz Transfers, or the value thereof, in an amount as yet undetermined but in no event believed to be less than $500,000, plus interest thereof, attorneys' fees and costs, or such other amount as may be determined by the Court.

### THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
**(Fraudulent Transfer)**

155. Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "154" as if set forth fully herein.

156. Upon information and belief, D'Alessio received less than reasonably equivalent value in exchange for the Schurz Transfers.

157. Each of the Schurz Transfers and Two-Year Transfers were made within two years of the Involuntary Petition Date and the date in which the corporate Debtors filed their voluntary petitions.

158. Upon information and belief, there were other transfers by the Debtors to or for the benefit of Ronald that occurred beyond the two years of the Involuntary Petition Date and the dates on which each of the petitions were filed by the corporate Debtors, which Plaintiff reserves the right to amend or supplement at a later date.

159. Upon information and belief, there are other and further assets transferred by D'Alessio and the corporate Debtors to Defendants for little or no consideration, including, but not limited to, the right to purchase the Boca Raton property.

160. At the time of the Schurz Transfers and Two-Year Transfers, the Debtors knew, or should have known, their creditors held claims for several million dollars against them and had instituted litigation against them.

161. Upon information and belief, D'Alessio and the corporate Debtors: (a) were insolvent on the dates of the Schurz Transfers and Two-Year Transfers or became insolvent as a result of the Schurz Transfers and the Two-Year Transfers; (b) were engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with them was an unreasonably small capital; or (c) intended to incur or believed that they would incur, debts beyond their ability to pay as they matured.

162. The Schurz Transfers and the Two-Year Transfers constitute fraudulent transfers under Bankruptcy Code § 548(a)(1)(B).

163. By reason of the foregoing, Plaintiff is entitled to an Order and Judgment against Defendants: (a) avoiding the Schurz Transfers and Two-Year Transfers pursuant to Bankruptcy Code § 548(a)(1)(B); and (b) setting aside the Schurz Transfers and Two-Year Transfers as fraudulent transfers; or, in the alternative, an Order and Judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than $500,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

## FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Fraudulent Transfer)

164. Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "163" as if set forth fully herein.

165. Upon information and belief, the Schurz Transfers and the Two-Year Transfers were made by D'Alessio and the corporate Debtors with the intent to hinder, delay, or defraud their creditors.

166. Each of the Schurz Transfers and the Two-Year Transfers were made within two years of the Involuntary Petition Date and the date on which the corporate Debtors filed their voluntary petitions.

167. At the time of the Schurz Transfers and Two-Year Transfers, the Debtors knew, or should have known, that their creditors held claims for several million dollars against them and had instituted litigation against them.

168. The Schurz Transfers and Two-Year Transfers constitute fraudulent transfers under Bankruptcy Code § 548(a)(1)(A).

169. By reason of the foregoing, Plaintiff is entitled to an Order and Judgment against Defendants: (a) avoiding the Schurz Transfers and Two-Year Transfers pursuant to Bankruptcy Code § 548(a)(1)(A); and (b) setting aside the Schurz Transfers and Two-Year Transfers as

fraudulent transfers; or, in the alternative, an Order and Judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than $500,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

## FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Fraudulent Transfer)

170. Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "169" as if set forth fully herein.

171. At the time of the Schurz Transfers and the Six-Year Transfers, each of the Debtors was insolvent or was thereafter rendered insolvent.

172. The Debtors did not receive fair consideration in exchange for the Schurz Transfers and the Six-Year Transfers.

173. The Schurz Transfers and the Six-Year Transfers constitute fraudulent transfers in violation of DCL § 273.

174. Under Bankruptcy Code §§ 544(b) and 550, and DCL § 273, Plaintiff may avoid the Schurz Transfers and the Six-Year Transfers.

175. By reason of the foregoing, Plaintiff is entitled to an Order and Judgment against Defendants: (a) avoiding the Schurz Transfers and the Six-Year Transfers pursuant to DCL § 273; and (b) setting aside the Schurz Transfers and the Six-Year Transfers as fraudulent transfers; or, in the alternative, an Order and Judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than $500,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

## **SIXTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
### **(Fraudulent Transfer)**

176.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "175" as if set forth fully herein.

177.    At the time of the Schurz Transfers and the Six-Year Transfers, the Debtors were engaged in or were about to engage in a business or transaction for which the property remaining in their hands after the Schurz Transfers and the Six-Year Transfers were an unreasonably small capital.

178.    The Debtors did not receive fair consideration in exchange for the Schurz Transfers and the Six-Year Transfers.

179.    The Schurz Transfers and the Six-Year Transfers constitute fraudulent transfers in violation of DCL § 274.

180.    Under Bankruptcy Code §§ 544(b) and 550, and DCL § 274, Plaintiff may avoid the Schurz Transfers and the Six-Year Transfers.

181.    By reason of the foregoing, Plaintiff is entitled to an Order and Judgment against Defendants: (a) avoiding the Schurz Transfers and the Six-Year Transfers pursuant to DCL § 274; and (b) setting aside the Schurz Transfers and the Six-Year Transfers as fraudulent transfers; or, in the alternative, an Order and Judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than $500,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

## SEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Fraudulent Transfer)

182. Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "181" as if set forth fully herein.

183. At the time of the Schurz Transfers and the Six-Year Transfers, the Debtors intended or believed that they would incur debts beyond their ability to pay as they matured.

184. The Debtors did not receive fair consideration in exchange for the Schurz Transfers and the Six-Year Transfers.

185. The Schurz Transfers and the Six-Year Transfers constitute fraudulent transfers in violation of DCL § 275.

186. Under Bankruptcy Code §§ 544(b) and 550, and DCL § 275, Plaintiff may avoid the Schurz Transfers and the Six-Year Transfers.

187. By reason of the foregoing, Plaintiff is entitled to an Order and Judgment against Defendants: (a) avoiding the Schurz Transfers and the Six-Year Transfers pursuant to DCL § 275; and (b) setting aside the Schurz Transfers and the Six-Year Transfers as fraudulent transfers; or, in the alternative, an Order and Judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than $500,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

## EIGHTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Fraudulent Transfer)

188. Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "187" as if set forth fully herein.

189.    The Schurz Transfers and the Six-Year Transfers were made by the Debtors with the actual intent to hinder, delay, or defraud present or future creditors of the Debtors in violation of DCL § 276.

190.    Under Bankruptcy Code §§ 544(b) and 550, and DCL § 276, Plaintiff may avoid the Schurz Transfers and the Six-Year Transfers.

191.    By reason of the foregoing, Plaintiff is entitled to an Order and Judgment against Defendants: (a) avoiding the Schurz Transfers and the Six-Year Transfers pursuant to DCL § 276; and (b) setting aside the Schurz Transfers and the Six-Year Transfers as fraudulent transfers; or, in the alternative, an Order and Judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than $500,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

## NINTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Attorneys' Fees)

192.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "191" as if set forth fully herein.

193.    The Schurz Transfers and the Six-Year Transfers were made by the Debtors and received by Defendants with the actual intent to hinder, delay, or defraud present or future creditors of the Debtors.

194.    The Schurz Transfers and the Six-Year Transfers were received by Defendants with the actual intent to hinder, delay, or defraud present or future creditors of the Debtors.

195.    The Schurz Transfers and the Six-Year Transfers constitute fraudulent transfers of the Debtors' assets in violation of DCL § 276-a.

196. By reason of the foregoing, Plaintiff is entitled to a judgment against Defendants, under DCL § 276-a, for reasonable attorneys' fees in an amount to be determined by the Court in connection with the prosecution of this action.

## TENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Unjust Enrichment)

197. Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "196" as if set forth fully herein.

198. Each of Defendants was enriched as a result of the Schurz Transfers and the Six-Year Transfers.

199. The enrichment of Defendants was at the expense of the Debtors and the Debtors' estates.

200. The circumstances relating to the Schurz Transfers and the Six-Year Transfers are such that equity and good conscience require that Defendants compensate the Debtors' estates.

201. By reason of the foregoing, Plaintiff is entitled to an Order and Judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than $500,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

## ELEVENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Preferential Transfer)

202. Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "201" as if set forth fully herein.

203. D'Alessio made the Schurz Transfers to Ronald within 90-days of the Involuntary Petition Date.

204.     D'Alessio and the corporate Debtors may have made other transfers to Ronald that cleared their accounts within the one-year period preceding the Involuntary Petition Date or the filing date of the voluntary petitions for the corporate Debtors.

205.     Every such transfer constituted a transfer of an interest in property of the Debtors.

206.     To the extent any such transfers was made on account of an antecedent debt owed by any Debtor making the transfer prior to the transfer, said transfer is subject to avoidance under Section 547(b) of the Bankruptcy Code.

207.     In such event, Ronald may have provided the goods, services, and/or value paid for by each of the transfers before each of the transfers was made.

208.     Upon information and belief, the Debtors that made each preferential transfer were insolvent on the date of every such transfer.

209.     Pursuant to Bankruptcy Code Section 547(f), each of the Debtors is presumed to have been insolvent on and during the ninety (90) days immediately preceding the Involuntary Petition Date or the filing date of the voluntary petitions for the corporate Debtors.

210.     Receipt of each of any such transfers enabled Ronald to receive more than he would have received (a) under Chapter 7 of the Bankruptcy Code, (b) if each of such transfers had not been made, and (c) if Ronald received payment of the debt paid by each of the Transfers to the extent provided by the provisions of the Bankruptcy Code.

211.     Ronald was the initial transferee of each such transfers, or the entity for whose benefit such transfers were made.

212.     Plaintiff is entitled to: (a) avoid such transfers under Section 547(b) of the Bankruptcy Code; and (b) recover the transfers or the value of the transfers from Ronald under

Section 550(a) of the Bankruptcy Code, in a sum to be determined at trial, but no less than $500,000, together with pre- and post-judgment interest thereon.

## TWELFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Civil Conspiracy)

213. Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "212" as if set forth fully herein.

214. Defendants were engaged in a course of action intended to defraud the Debtors' creditors.

215. The Schurz Transfers, the Two-Year Transfers and the Six-Year Transfers were to insiders and are fraudulent conveyances pursuant to Bankruptcy Code §§ 544, 548 and 550, and DCL §§ 273, 274, 275, and 276.

216. Each of the individual Defendants conspired together with D'Alessio and intentionally participated in this course of action.

217. The Schurz Transfers were overt and furthered the conspiracy to defraud the Debtors' creditors.

218. Defendants intended to participate in the conspiracy to defraud the Debtors' creditors by accepting, and enjoying the benefits of, the Schurz Transfers and other transfers at the expense of the Debtors' creditors.

219. The Debtors' creditors were harmed as a result of Defendants' participation in this course of action.

220. As a result of Defendants' conspiracy to defraud the Debtors' creditors, the Debtors' bankruptcy estates were deprived of the value of, among other things, the income derived from the 2903 Property and the 2909 Property and the opportunity to sell those properties.

221. By reason of the foregoing, Plaintiff is entitled to an Order and Judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than $500,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

## THIRTEENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Unauthorized Post-Petition Transfers)

222. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "221" as if fully set forth herein.

223. Upon information and belief, after the Involuntary Petition Date and voluntary petition dates for the corporate Debtors, the Debtors transferred property of their estates, or assets derived from property of their estate to Ronald, directly or indirectly, including the Post-Petition Transfers.

224. By the Post-Petition Transfers, the Debtors transferred an interest of theirs in property.

225. The Post-Petition Transfers were not authorized by the Bankruptcy Code or the Court.

226. By reason of the foregoing, the Post-Petition Transfers are avoidable pursuant to Bankruptcy Code § 549.

227. Pursuant to Bankruptcy Code § 550(a), the recovery of property for the benefit of the Debtors' estates is authorized to the extent avoided under Bankruptcy Code § 549.

228. By reason of the foregoing, Plaintiff is entitled to an Order and Judgment against Defendants in an amount as yet undetermined, but no less than $87,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

## FOURTEENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Conversion)

229.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "228" as if set forth fully herein.

230.     Upon information and belief, after the Involuntary Petition Date and the date of the corporate Debtors' voluntary filing, the Debtors made the Post-Petition Transfers.

231.     The Debtors have a legal and equitable interest in any funds comprising the Post-Petition Transfers.

232.     The Debtors legal and equitable interest in and to the funds comprising the Post-Petition Transfers are property of the Debtors' estates.

233.     Defendants, either directly or indirectly, took possession of the funds comprising the Post-Petition Transfers in derogation of the Debtors' rights in and to those funds.

234.     Defendants, either directly or indirectly, have dominion over the funds comprising the Post-Petition Transfers.

235.     Defendants had no right to the funds comprising the Post-Petition Transfers.

236.     The Debtors had no authority to transfer, directly or indirectly, the funds comprising the Post-Petition Transfers to Defendants.

237.     Defendants, either directly or indirectly, have interfered with the Debtors' estates' rights with respect to the funds comprising the Post-Petition Transfers.

238.     Defendants' dominion over the funds comprising the Post-Petition Transfers subsequent to the Involuntary Petition Date and the respective filing dates for the corporate Debtors is a derogation of the Debtors' estates' rights in and to those funds.

239.     Defendants failed to return the funds to the Debtors' estates.

240.     Demand is futile in light of the allegations set forth herein, including the fact that Defendants know that they had no right to the funds comprising the Post-Petition Transfers.

241.     By reason of the foregoing, Plaintiff is entitled to an Order and Judgment against Defendants in an amount as yet undetermined, but no less than $87,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

## FIFTEENTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Disallowance of Claims -11 U.S.C. §§ 502(d) and (j))

242.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "241" as if set forth fully herein.

243.     Ronald is a transferee of transfers avoidable pursuant to SectionS 544, 547 and/or 548 of the Bankruptcy Code, which property is recoverable under Section 550 of the Bankruptcy Code.

244.     Ronald has not paid the value of the Schurz Transfers, the Two-Year Transfers, the Six-Year Transfers or the Post-Petition Transfers, or turned over such property for which he is liable under Section 550 of the Bankruptcy Code.

245.     Pursuant to Section 502(d) of the Bankruptcy Code, any and all claims of Ronald against the Debtors, including any and all claims assigned by Ronald, must be disallowed until such time as Defendant pays Plaintiff the amount equal to the aggregate amount of the transfers, plus interest thereon and costs.

246.     Pursuant to Section 502(j) of the Bankruptcy Code, any and all previously allowed claims of Ronald against the Debtors, including any and all claims assigned by Ronald, must be reconsidered and disallowed until such time as Ronald pays to Plaintiff the amount equal to the value of the transfers received by him from the Debtors, plus interest thereon and costs.

**WHEREFORE**, Plaintiff demands judgment on her claims for relief against Defendants as follows:

i. On her first claim for relief, granting a preliminary and permanent injunction enjoining Defendants from transferring, conveying, or otherwise disposing of property of the Debtors' estates.

ii. On her second claim for relief, directing all Defendants to turn over any and all property of the estate, including, but not limited to, the Schurz Transfers, or the value thereof, in an amount as yet undetermined but in no event believed to be less than $500,000, plus interest thereof, attorneys' fees and costs, or such other amount as may be determined by the Court.

iii. On her third, fourth, fifth, sixth, seventh and eighth claims for relief, against Defendants: (a) avoiding the Schurz Transfers, the Two-Year Transfers and the Six-Year Transfers; and (b) setting aside the Schurz Transfers, the Two-Year Transfers and the Six-Year Transfers as fraudulent transfers; or, in the alternative, an Order and Judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than $500,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

iv. On her ninth claim for relief, against Defendants for reasonable attorneys' fees in an amount to be determined by the Court in connection with the prosecution of this action.

v. On her tenth and eleventh claims for relief, against Defendants in an amount as yet undetermined, but in no event believed to be less than $500,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

vi. On her twelfth claim for relief, against Defendants: (a) avoiding the Post-Petition Transfers; and (b) setting aside the Post-Petition Transfers; or, in the alternative, an Order and Judgment against Defendants in an amount as yet undetermined, but in no event believed to be less than $87,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

vii. On her thirteenth claim for relief, against Defendants in an amount as yet undetermined, but in no event believed to be less than $500,000, plus interest thereon, attorneys' fees and costs, or such other amount as may be determined by the Court.

viii.      On her fourteenth claim for relief, against Defendants avoiding the preferential transfers and directing Defendants to return to Plaintiff the amount of the transfers pursuant to Bankruptcy Code Sections 547(b) and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

ix.      On her fifteenth claim for relief, disallowing any claims filed or otherwise held by Ronald and/or his assignee against the Debtors until Ronald returns the transfers to Plaintiff pursuant to Bankruptcy Code Sections 502(d) and (j); and

x.      For all costs, disbursements and expenses, including attorneys' fees, in connection with this action, together with such other, further and different relief as this Court may deem just and proper.

Dated: April 29, 2019
        Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
Counsel to Plaintiff Marianne T. O'Toole, as Trustee

By:      *s/Salvatore LaMonica*
        Salvatore LaMonica, Esq.
        David A. Blansky, Esq.
        Partners of the Firm
        3305 Jerusalem Avenue
        Wantagh, New York 11793
        Telephone: (516) 826-6500